NOT FOR PUBLICATION                                                                                   CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|                                         |   |                      |
|-----------------------------------------|---|----------------------|
| MARIA SCALI,                            | : |                      |
|                                         | : |                      |
|          Plaintiff,                     | : | **OPINION**          |
|                                         | : |                      |
|     v.                                  | : | Civ. No. 03-0657 (WHW) |
|                                         | : |                      |
| JO ANNE B. BARNHART,                    | : |                      |
| COMMISSIONER OF                         | : |                      |
| SOCIAL SECURITY,                        | : |                      |
|                                         | : |                      |
|          Defendant.                     | : |                      |

**Walls, District Judge**

Plaintiff Maria Scali appeals her denial of disability benefits. For the following reasons, this Court will affirm the Administrative Law Judge's ("ALJ") decision to deny benefits.

## BACKGROUND

**A.  Procedural History**

Plaintiff applied for disability insurance benefits on May 21, 1999. (Tr. at 12.) The claim was denied initially, denied on reconsideration, and denied after a hearing before the ALJ on October 22, 2001. (Tr. at 12.) Plaintiff now appeals to this Court and requests that the decision of the ALJ be reversed and that she be declared disabled and entitled to benefits under the Social Security Act. (the "Act") (Pl.'s Br. at 5.)

**B.  Personal Facts & Employment History**

**NOT FOR PUBLICATION**                                                                    **CLOSED**

Plaintiff was born in 1941 and immigrated to the United States in 1965 after completing fifth grade in Italy. (Tr. at 26.) Presently, she can speak English but has difficulty reading a newspaper in English. Id. For much of her life, she has worked as a seamstress, performing both hand and machine operated sewing. (Tr. at 33.) Her last regular job as a sewing machine operator never required her to lift more than 20 lbs. Id. She stopped working in September 1996 when the factory where she worked closed. (Tr. at 34.) She concedes, however, that she would likely have stopped working regardless of the closure because she suffered back pains from a fall in June 1996 while a bus passenger. Id. Afterwards, she started collecting unemployment benefits. (Tr. at 30.) Around 1998, she worked several months at a salad bar at Shop Rite. (Tr. at 29.)

**C.   Medical History**

The medical evidence indicates that Plaintiff was treated by Dr. Chang from January 1993 to January 1995 for recurrent retinal detachment with proliferative vitreal retinopathy of the right eye. (Tr. at 156-167.) Dr. Chang opined in a July 1994 report that Plaintiff's right eye had 20/200 visual acuity, no depth perception and that she was unable to return to work. (Tr. at 229.) Still, Plaintiff continued to work until 1996. On a consultative examination in August 1999, Dr. Cummingham diagnosed Plaintiff with low vision in the right eye and decreased vision of unknown etiology in the left eye. (Tr. at 183.) On another consultative examination in October 1999, Dr. Zolli opined that Plaintiff was blind in the right eye, hyperopic with mild astigmatism in the left eye, and that stronger glasses would help her see clearer. (Tr. at 189.) Dr. Holtz in a

**NOT FOR PUBLICATION** **CLOSED**

February 2000 examination diagnosed Plaintiff with "very little vision" in the right eye, which suffered from untreated glaucoma, and with a "completely healthy" left eye. (Tr. at 286.)

In June 1996, Plaintiff was injured in a car accident and sent to the emergency room at Clara Maas Medical Center, where she was diagnosed with a superficial head injury, scalp contusion cervical sprain, and contusion of the left hand and leg. Doctors found no fractures nor was her left hand dislocated. (Tr. at 173.) A computerized tomography ("CT") scan of the head and pelvis were negative. (Tr. at 175, 176.) The examination of the left femur showed neither fracture nor other significant abnormality, and the cervical spine showed no fracture; however the lower spine, particularly at the C5-C6, showed degenerative changes. (Tr. at 174.)

After the accident, Plaintiff complained about pain in the bilateral para-cervical and cervico-occipital distribution[1]. A July 1996 MRI of the cervical spine revealed "cervical spondylosis at the C5-C7 levels with spinal canal, lateral recess and mild foraminal encroachment, a herniated disc at the C5-C6 level and an anterior disc herniation at the C6-C7 level as well as a tiny right posterior herniated disc at the C6-C7 level." (Tr. at 13.) Plaintiff was later referred by Dr. Greifinger to Dr. Noonan for physical therapy, which improved her condition. (Tr. at 253, 254.) After reviewing the consultation reports of Dr. Greifinger and Dr. Brand, Dr. Noonan indicated that Plaintiff has been unable to perform her daily activities from the time of her first exam, sometime after the bus accident in June 1996, to December 1996, and that she has permanently lost use of her neck, making it difficult for her to perform daily activities and work without pain. (Tr. at 243.)

---

[1] "bilateral para-cervical and cervico-occipital distribution" refers to both sides of neck, areas relating to the neck in which the branches of an artery or a nerve terminate, or the area supplied by such an artery or nerve. STEDMAN'S MEDICAL DICTIONARY 202, 314, 512. (26th ed. 1995)

**NOT FOR PUBLICATION**                                              **CLOSED**

     Plaintiff recovered $15,000 in a lawsuit arising from the bus accident. (Tr. at 44.) Afterwards, she received sporadic treatment, which consisted primarily of pills from Dr. Christina, from January 1997 though July 1999. In a March 2003 report, Dr. Christina noted that she examined and treated Plaintiff in January 1997 for low back pain and that the exam was unremarkable except for Plaintiff significantly limited range of motion in the lumbar spine. (Tr. at 201.) Plaintiff was also examined by Dr. Christina in July 1998 for knee pains bilaterally and was diagnosed with crepitus. Id. Plaintiff was again seen in July 1999 for low back pain lasting several days. Id. She was given medication and referred to her orthopedist, who treated her intermittently. Id. Dr. Christina confirmed that Plaintiff had low back and knee pain, but also noted the difficulty of evaluating the severity of the pain. (Tr. at 202.) Plaintiff also occasionally visited Dr. Stephenella for hypodermic injections in her back until 1998. (Tr. at 44.)

     Dr. Merlin examined Plaintiff in March 2001 and found that she had longstanding blindness in the right eye, unstable neck pain, low back pain and left shoulder pain. He concluded that Plaintiff is able to sit, stand, walk, handle objects, hear, speak, and travel, but should not lift or carry heavy objects. (Tr. at 213.)

     Plaintiff takes prescription medication for her eyes and cholesterol level. To alleviate her pain, Plaintiff takes Celebrex, a prescription medication, once or twice a week, and extra-strength Tylenol about 4 to 6 times a week. (Tr. at 31.) Her daily activities are generally limited to light housework. She goes grocery shopping with her daughter and sometimes carries light packages. She alleges that she cannot lift a gallon of milk, stand for more than 30 minutes, or sit for more than 10 minutes continuously. (Tr. at 40.)

**NOT FOR PUBLICATION**                                                                                                      **CLOSED**

The State Agency physicians opined that Plaintiff visual limitation is not severe, and that she could lift up to fifty pounds, stand and walk for six hours, and sit for six hours. (Tr. at 190-192, 204.) The physicians also found that Plaintiff was occasionally limited in her ability to climb, balance, stoop, kneel, crouch, and crawl. (Tr. at 205.)

**DISCUSSION**

**A.   Standard of Review**

This Court has jurisdiction to review the Commissioner final decision under 42 U.S.C. 405(g). The district court must affirm the Commissioner decision if it is "supported by substantial evidence." 42 U.S.C.  405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB , 305 U.S. 197, 229 (1938)). While substantial evidence must have real probative weight, it "may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988)).

 "Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s  decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or

**NOT FOR PUBLICATION**                                                                                          **CLOSED**

fails to resolve, a conflict created by countervailing evidence." Morales, 225 F.3d at 317. Cursory conclusions unsupported by evidence cannot justify an ALJ decision. Id. "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (quoting Saldana v.Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa.1976)).

In determining whether substantial evidence supports the Commissioner decision, the reviewing court must consider: "1) objective medical facts; (2) diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain; and (4) the claimant educational background, work history and present age." Snee v. Secretary of Health & Human Services, 660 F. Supp 736, 738 (D.N.J. 1987); accord Blalock v.Richardson, 483 F.2d 773, 776 (4th Cir. 1972). In order for this Court to properly conduct judicial review and to avoid "judicial usurpation of administrative functions" it must ensure that the "administrative decision...[is] accompanied by a clear and satisfactory explication of the basis on which it rests." Id. Otherwise, remand is appropriate. Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**B.   Standard for the Commissioner Determination of Disability**

"Disability" is defined by the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

**NOT FOR PUBLICATION**                                                             **CLOSED**

of not less than 12 months." 42 U.S.C. 423(d)(1)(A); Barnhart v. Thomas, 124 S. Ct. 376, 379 (2004); Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

The Commissioner must follow a five step sequential process to determine if an applicant is disabled and eligible for Social Security Disability benefits. 20 C.F.R. 404.1520. First, the Commissioner must determine if the claimant is currently engaged in substantial gainful activity: "the performance of significant physical or mental duties...for remuneration or profit. Plummer, 186 F.3d at 428; Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine if the claimant is suffering from a severe impairment: "any impairment or combination of impairments which significantly limits the claimant physical or mental ability to do basic work activities." Plummer, 186 F.3d at 428; Thomas, 124 S. Ct. at 379; 404.1520(c); 416.920(c). Third, if the claimant impairments are severe, the ALJ must further determine if they are listed in or equivalent to the impairments under Appendix 1 of the Social Security Regulations 20 C.F.R. 404.1520. Plummer, 186 F.3d at 428; 404.1520. Fourth, if the impairments are not listed in or equivalent to those listed in Appendix I, the ALJ must determine if the claimant has the "residual functional capacity to perform" his or her "past relevant work." Id. "Residual functional capacity is defined as what a claimant can still do despite his limitations." Burns, 312 F.3d at 119. Fifth, if the ALJ determines that the claimant is unable to return to her past occupation, the burden shifts to the Commissioner to show that the claimant can perform another type of work. Bowen v. Yuckert, 482 U.S. 137, 146, n.5, 107 S. Ct. 2287, 2294, n.5 (1987). The ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can

**NOT FOR PUBLICATION**                                                        **CLOSED**

perform," accounting for his or her educational and occupational experiences. Plummer, 186 F.3d at 428.

## ANALYSIS

1. The ALJ correctly concluded that Plaintiff's impairment does not establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulation No.4.

The ALJ concluded in step one and two of the sequential analysis that Plaintiff has not engaged in substantial gainful activity since September 27, 1996 and that she is severely impaired because she lost vision in her right eye and has degenerative disc disease. (Tr. at 17.) This impairment, the ALJ found under step three of the analysis, failed to establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4, specifically, the listings in Sections 1.00, 2.00, 4.00 and 12.00 of Appendix 1. (Tr. at 15.)

Plaintiff contends that she meets listing 1.11[2] because she fractured her tibia[3] and that it has yet to regain solid union and full weight bearing after 12 months. (Pl. Br. at 3.) Listing 1.06 provides that an individual must have fractured her femur, tibia, pelvis, or one or more of the tarsal bones with:

> A. solid union not evident on appropriate medically acceptable imaging and not clinically solid; and

---

[2] Listing 1.11 does not exist. Plaintiff, as the defendant pointed out, means to rely on Listing 1.06.

[3] The "tibia" is the medial and larger of the two bones of the leg, articulating with the femur, fibula, and talus. STEDMAN'S MEDICAL DICTIONARY 473 (26th ed. 1995)

**NOT FOR PUBLICATION**                                                                                       **CLOSED**

      B.   inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P., App. 1. There is no medical evidence that Plaintiff met either of these requirements. In fact, Plaintiff fails to point to any medical evidence that would support her claim that she fractured her tibia. Additionally, Plaintiff filed for disability benefits based, not on this impairment, but instead on her eye, neck, and back impairments. (Tr. at 119, 123.) Because Plaintiff's impairment did not meet or equal any of the criteria listed in Appendix 1, her condition did not qualify her for a determination of *per se* disability. See 20 C.F.R, Part 404, Sub.P, App.1.

    2.       The ALJ's conclusion that Plaintiff maintained the residual functional capacity to perform some work at the medium exertional level is supported by substantial evidence.

The analysis proceeded to step four, where the ALJ determined that Plaintiff has not had, since September 27, 1996, the residual functional capacity to perform any past relevant work. Such finding is not challenged by Plaintiff.

In step five, the ALJ found that Plaintiff maintained the residual functional capacity to perform some work at the medium exertional level. (Tr. at 16.) Plaintiff argues that the ALJ erred in disregarding the objective findings of serious injuries related to Plaintiff's orthopedic disability of her neck. She introduced the medical records of Dr. Brand, Dr. Greifinger, Dr. Noonan, and the results of the MRI, which describes Plaintiff's impaired neck at the C5-C7 level. (Local Rule 9.1 Statement 1-2.)

**NOT FOR PUBLICATION**                                                                  **CLOSED**

The ALJ did not overlook this impairment because, in reaching his decision, he considered the following evidential sources, which are consistent with each other. First, an MRI scan of the cervical spine revealed "cervical spondylosis at the C5-C7 levels with spinal canal, lateral recess and mild foraminal encroachment, a herniated disc at the C5-C6 level, and an anterior disc herniation at the C6-C7 level as well as a tiny right posterior herniated disc at the C6-C7 level." (Tr. at 13, 14.) Second, the medical records from Clara Maas Medical Center revealed degenerative changes in the lower spine, particularly at the C5-C6 level. (Tr. at 174.) Third, Dr. Merlin examined Plaintiff in March 2001 and found that she had unstable neck pain, low back pain and left shoulder pain. (Tr. at 213.) Because the aforementioned records all showed that Plaintiff's neck was impaired at the C5-C7 level, the ALJ did not ignore Plaintiff's impairment. Moreover, the ALJ found based on the entire record, including medical records and the opinion of the state agency physicians, that "Plaintiff suffered some pain and limitations due to the impairment, and as a result, her capacity to perform work is restricted." (Tr. at 16.) The ALJ, however, also found that plaintiff has had, at all times, the residual functional capacity to perform work requiring only moderate exertion. (Id.)

Plaintiff argues that the ALJ erred by relying upon the opinions of the state agency physicians, who found that Plaintiff's visual limitation is not severe, and that she could lift up to fifty pounds, stand and walk for six hours, and sit for six hours. (Tr. at 190-192, 204.) The physicians also found that Plaintiff was occasionally limited in her ability to climb, balance, stoop, kneel, crouch, and crawl. Plaintiff claimed that those opinions were based on incomplete information because the examiners did not have Dr. Noonan's medical records at the time they examined her: "In particular, they did not have for their review the MRI report that revealed

10

**NOT FOR PUBLICATION**                                                                 **CLOSED**

herniated discs at the C5-C6 and C6-C7 levels and the bone density test revealing diffuse osteoporosis of the lumbar spine and borderline osteoporosis in the left hip." (Local Rule 9.1 Statement 2.)

The Commissioner's regulations and rulings recognize that such state agency examiners are qualified physicians who are experts at evaluating medical issues on disability claims under the Act and accordingly, their opinions must be considered. See 20 C.F.R. §§ 404.1527(f) (2) (i) and 416 (f). See also SSR 96-6p. On the other hand, administrative judges are not bound by any findings made by state agent examiners. Id. In the current case, the state examiners' determinations were not the sole basis of the ALJ's decision. (Tr. at 16.) Indeed, the ALJ arrived at his decision after considering all the medical evidence in the record, including the records of Dr. Noonan and the MRI report, both of which Plaintiff alleges that the state examiners did not consider. (Tr. at 13, 14, 16.) Although the state examiners did not consider Dr. Noonan's report and MRI's findings, the ALJ did. Plaintiff's case was therefore not unfairly prejudiced. The ALJ's decision is supported by substantial evidence.

3. The ALJ's decision regarding Plaintiff's subjective complaints of pain and alleged nonexertional impairments are based on substantial evidence.

Plaintiff also contends that the ALJ erred in disregarding the medical records of Dr. Noonan, which Plaintiff asserts support her subjective complaints of disabling pain and other symptoms and limitations that she believes precludes all significant work activity. (Local Rule 9.1 Statement 2.) Plaintiff contends that Dr. Noonan in his December 6, 1996 report states that "because of the injuries, [Plaintiff] has sustained permanent loss of the use of her neck which

11

**NOT FOR PUBLICATION**                                           **CLOSED**

leaves her with great difficulty performing to a great extent her usual daily activity and work functions without pain." (Tr. at 242-243.) Plaintiff asserts that the ALJ erred in not asking the claimant to explain why she did not seek more treatment or take prescription medication. In evaluating a claimant's subjective allegations of pain, a two-step standard is employed. First, the ALJ must determine whether claimant suffers from a medically determinable impairment that could reasonably be expected to cause the claimant's symptoms. See 20 C.F.R. §§ 404.1529(a) and 416.929(a). Second, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they might limit the claimant's capacity for work. See Id. Plaintiff bears the burden of demonstrating that her subjective complaints are substantiated by medical evidence. Williams v. Sullivan, 970 F.2d 1178,1186 (3d Cir. 1992). "Even in situations where a subjective complaint of pain coincides with a known impairment, it is within the discretion of the ALJ to discount the claim if there is a rational basis to do so." Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) (citing Duncan v. Sullivan, 786 F. Supp 466, 470 (E.D. Pa. 1992)).

 In evaluating Plaintiff's subjective complaints of disabling pain, the ALJ considered the following factors under SSR 96-7p and 20 C.F.R. § 404.1529: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environment conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief pain; (5) functional restrictions; and (6) the claimant's daily activities and work record. (Tr. at 15.) The ALJ found that Plaintiff's subjective complaints of disabling pain and other symptoms and limitation that preclude all significant work activity are not credited or supported by the

12

**NOT FOR PUBLICATION**                                                              **CLOSED**

evidence. (Tr. at 17.) The question then is whether the ALJ had a rational basis for reaching these conclusions.

The record supports the finding that the ALJ had a rational basis for his determinations. For example, Plaintiff recovered $15,000 from the lawsuit arising from the bus accident in 1996 and completely stopped receiving treatment for her back injury since receiving that award. (Tr. at 15,16.) Plaintiff received pills from the doctor, but only took them occasionally. (Tr. at 16.) She took Celebrex for pain, but only when needed. (Tr. at 31.) She also took non-prescription pain relievers (Tylenol extra-strength) about 4 to 6 times a week. Id. The ALJ also found that Plaintiff sought no other modalities of treatment and gave little indication to support her allegation that her back condition was so painful as to preclude her from all employment. (Tr. at 16.)

Plaintiff also argues that the ALJ failed to ask her to explain why she neglected to seek more treatment or take prescription medication. According to Social Security Ruling 96-7p, it may be necessary for the ALJ to question the individual at the administrative hearing or to recontact the individual in order to ascertain whether there are good reasons that the individual failed to seek medical treatment in a consistent manner. In the current case, the ALJ asked Plaintiff at the hearing "[d]id you have any treatment after the accident was resolved, after the lawsuit was resolved?" Plaintiff said "[n]o, because it took a long time." (Tr. at 44.) Also, the ALJ asked about why the orthopedist discontinued treatment, specifically why Plaintiff failed to visit him in 3 years. Plaintiff replied that she changed her medical insurance provider to one that did not cover her doctor's practice. The ALJ continued inquiring whether Plaintiff's current insurance covers visits to the orthopedist, and Plaintiff replied that she was unsure. (Tr. at 45.) By raising those questions, the ALJ gave Plaintiff ample chances to provide reasons and

13

**NOT FOR PUBLICATION**                                                                                                 **CLOSED**

explanations for her failure to seek treatment. The ALJ fulfilled his duty to further the evidence and Plaintiff cannot challenge ALJ's decision on this issue.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is affirmed.

<u>s/William H. Walls</u>
United States District Judge

**NOT FOR PUBLICATION**                                                                 **CLOSED**

**Appearances**

Steven L. Schepps
Gordon & Gordon
80 Main Street
West Orange, NJ 07052

Edward F. Szep
Law Offices of Emanuel S. Fish
2400 Millburn Ave.
Maplewood, NJ 07040

Anthony J. Labruna, Jr.
U.S. Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102